United States District Court
Southern District of Texas
**ENTERED**
September 21, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| JAMES S.,[1] | § § § | |
| *Pro Se Plaintiff,* | § § | |
| v. | § § | No. 4:19-cv-4854 |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security | § § § § | |
| *Defendant.* | § § | |

### MEMORANDUM AND ORDER

Plaintiff James S. ("Plaintiff") filed this suit seeking judicial review of the denial of disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in accordance with 28 U.S.C. § 636(c)(1) and filed cross-motions for summary judgment. ECF Nos. 4, 11, 12. Based on the briefing and the record, the Court determines that Plaintiff's motion for summary judgment should be denied and

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration ("SSA"). Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

Defendant's motion for summary judgment should be granted.

## I.  BACKGROUND

Plaintiff is 51 years-old, with a high-school level education. R. 81, 259.[3] He served four years in the United States Marine Corps. R. 223. Following his military service, Plaintiff worked as an agent for the United States Department of Homeland Security ("DHS"), an equipment operator, and a truck driver. R. 266. Plaintiff has not worked since June 10, 2014. R. 258.

On October 13, 2017, Plaintiff filed his application for disability insurance benefits under Title II of the Act, claiming both physical and mental impairments and alleging an onset date of June 10, 2014. R. 223, 257–58. Plaintiff based[4] his application on chronic back pain, chronic foot pain, post-traumatic stress disorder ("PTSD"), a sleep disorder, bilateral knee pain, and hearing loss in both ears. R. 258. The Commissioner denied Plaintiff's claim initially, R. 115, and on reconsideration, R. 123.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 47, 217. Plaintiff, a medical expert, and a

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 9.

[4] The relevant time period is June 10, 2014—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. ECF No. 11 at 1. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

vocational expert ("VE") testified at the hearing. R. 47. The ALJ issued a decision

denying Plaintiff's request for benefits.[5] R. 26. The Appeals Council denied

Plaintiff's request for review, affirming the ALJ's denial of benefits. R. 13; *see Sims*

*v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies

the request for review, the ALJ's opinion becomes the Commissioner's final

decision).

Plaintiff filed this appeal, ECF No. 1, challenging the ALJ's analysis and asking

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. R. 37-38. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 31 (citing 20 C.F.R. 404.1571 *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairments: hypertension, degenerative disk disease of the lumbar spine, degenerative joint disease of the knee bilaterally, planter fasciitis, sleep apnea, obesity, PTSD, and affective mood disorder. R. 31. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). R. 32. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). R. 33. However, the ALJ added limitations, including that Plaintiff could stand and/or walk about two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; could never climb ropes, ladder or scaffolds, kneel or crawl; could occasionally stoop, crouch and negotiate stairs and ramps with a handrail and reach overhead; could never lift objects from the floor, although Plaintiff could lift objects from the level of the knees to shoulder level and should have the option to use a cane; could never work in proximity to hazards like dangerous machinery, unprotected heights, or in environments with concentrated exposure to heavy industrial vibrations; Plaintiff's ability to understand, remember, and carry out job instructions is limited, but Plaintiff could still understand, remember, and carry out detailed and simple repetitive tasks but not complex tasks; could occasionally interact with the public and coworkers; and could perform work at a non-forced pace. R. 33. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 36. At step five, based on the testimony of the vocational expert and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including new account interviewer, document specialist, and telephone order clerk. R. 37-38. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 38.

the Court to modify the ALJ decision and grant monthly maximum insurance benefits, retroactive to the date of initial disability, or, in the alternative, remand for reconsideration of the evidence. ECF No. 1; Pl.'s MSJ Brief, ECF No. 11. Defendant filed a cross-motion, contending that the ALJ's findings are proper and supported by substantial evidence. Def.'s MSJ Brief, ECF No. 13.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*,

4

230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we

5

find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.  BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012).  The claimant bears the burden of proof at the first four steps to

establish that a disability exists. *Id.* The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Although represented by counsel in earlier proceedings, Plaintiff appears before the Court *pro se*. R. 217–18; ECF No. 1 at 1. His documents, "however unartfully pleaded, must be held to less stringent standards than formal pleadings by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, the Court construes Plaintiff's complaint and brief "liberally to afford all reasonable inferences which can be drawn from them[,]" *In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 941 n.4 (5th Cir. 2010), and "interpret[s] [them] as raising the strongest arguments that they suggest." *Davis v. Berryhill*, 4:17-CV-521, 2018 WL 1536557, at *9 (S.D. Tex. Jan. 3, 2018).

Plaintiff raises three issues: the ALJ failed to give sufficient weight to Plaintiff's United States Department of Veterans Affairs ("VA") disability rating, the ALJ's RFC determination is not supported by substantial evidence, and the ALJ erred by applying the medical-vocational guidelines at step five. ECF No. 1 at 3; ECF No. 11 at 1.

The Commissioner argues that the ALJ committed no error regarding the VA's disability rating, the ALJ's RFC determination is supported by substantial evidence, and the ALJ did not rely solely on the medical-vocational guidelines. ECF No. 13 at 5, 11.

## A. ALJ Did Not Err Regarding Plaintiff's VA Disability Rating.

Construing his motion liberally, Plaintiff asserts that the ALJ failed to give sufficient weight to the VA's disability determination. *See* ECF No. 11 at 2.[6] Defendant counters that the VA disability determination is not legally binding on the ALJ and that the ALJ's failure to consider the VA determination is at most harmless error. ECF No. 13 at 5–6.

### 1. *There is no legislation that substitutes the VA's disability determination for the medical requirements of the Social Security Administration.*

Plaintiff contends that his VA disability rating satisfies the SSA's medical evaluation requirements. ECF No. 11 at 1. Plaintiff asserts that the Benefit Rating Acceleration for Veteran Entitlements Act ("BRAVE Act"), which was introduced in Congress in 2009, gives veterans with a total disability rating from the VA the ability to skip the medical assessment the SSA normally requires. *Id*. Plaintiff cites

---

[6] Plaintiff asserts that his disability rating from the VA satisfies the medical evaluation requirements of the SSA's disability program because of the BRAVE Act. *See* ECF No. 1 at 3. Courts "should use common sense in interpreting the frequently diffuse pleadings of pro se complaints" and accord them a "liberal yet realistic construction." *Samtani v. City of* Laredo, 274 F. Supp. 3d 695, 698 (S.D Tex. 2017) (citing *Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir. 1980); *U.S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir. 1976)).

a 2014 Social Security Bulletin article that discusses the BRAVE Act and its potential impact. *Id.* at 6–14. Plaintiff also relies on a letter that confirms that the VA considered him "totally and permanently disabled solely due to [his] service-connected disabilities." *Id.* at 4.

Plaintiff's reliance on the BRAVE Act is misplaced. Congress introduced this legislation in both the House of Representatives and Senate, but never voted on the bill and it never became law. Benefit Rating Acceleration for Veteran Entitlements Act, H.R. 4054, 111th Cong. (2009); S. 2759, 111th Cong. (2009). The article Plaintiff references does not offer any evidence to the contrary and explicitly states that the bills were not enacted.[7] *See* ECF No. 11 at 11. Rather, it discusses the possible implications had the legislation passed and become law. *See id.* ("This article highlights the intent and provisions for each program" and "examines the probable outcomes had the BRAVE Act been enacted.").

Because the legislation never became law, Plaintiff's argument is without merit.

---

[7] Plaintiff attached for the Court's reference only the first five pages of a thirty-seven-page article on the interactions between the VA's disability compensation program and the Social Security Disability Insurance Program for veterans rated "totally disabled" by the VA. The relevant portion discussing the BRAVE Act appears on the first page and contains a footnote that reveals that neither the House nor Senate bills were enacted in 2009 or have since been reintroduced. The footnote appears in the portion that the Plaintiff failed to attach to his motion. L. Scott Muller, Nancy Early & Justin Ronca, *Veterans Who Apply for Social Security Disabled-Worker Benefits After Receiving a Department of Veterans Affairs Rating of "Total Disability" for Service-Connected Impairments: Characteristics and Outcomes*, 74 SOC. SEC. BULLETIN 1, 1 n.1 (2014).

> ### 2. The ALJ was required to consider the supporting documents underlying Plaintiff's VA disability rating, but Plaintiff failed to submit them.

Plaintiff asserts that the ALJ failed to "acknowledge or consider [his] military involvement and background." ECF No. 1 at 3. A liberal construction of this statement is that the ALJ failed to give adequate weight to his VA disability rating. The Commissioner concedes that the ALJ did not discuss Plaintiff's VA disability rating in the decision. ECF No. 13 at 5.

In cases filed after March 27, 2017, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency . . . about whether you are disabled . . . ." 20 C.F.R. § 404.1504.[8] Instead, the ALJ is required to "consider all of the supporting evidence underlying the [VA's] decision that [the SSA] receive[s] as evidence in [claimant's] claim in accordance with § 404.1513(a)(1) through (4)." *Id.*

Since Plaintiff filed his claim on October 13, 2017, the revised version of section 404.1504 governs the ALJ's treatment of Plaintiff's VA disability rating.

---

[8] Previous case law held that "[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that *is entitled to a certain amount of weight and must be considered by the ALJ*." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (emphasis added) (citing *Loza*, 219 F.3d at 394); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir.1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir.1981)). Since those cases were decided, the law has changed. This Court must follow the new standard. *See Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir. 2015) ("An intervening change in law must be binding on this court.").

Thus, the ALJ was not required to provide an analysis regarding Plaintiff's VA disability rating, but should have considered the supporting documents underlying that rating. *See Walker v. Saul*, No. 4:19-cv-00338, 2020 WL 3491839, at *5 (S.D. Tex. June 26, 2020) ("[T]he ALJ retains a duty to consider the record underlying a VA disability rating."). However, Plaintiff failed to submit as evidence any documents the VA used to determine that he is disabled.[9] The oldest medical records in the administrative record are from 2015, one year after Plaintiff's VA disability effective date.[10] Therefore, it is unlikely that the VA used any of the medical evidence in the administrative record to complete its disability evaluation.

Because the ALJ was not required to provide an analysis regarding the VA's disability determination and Plaintiff failed to submit as evidence the documents underlying that determination, the ALJ's failure to discuss Plaintiff's VA disability rating was not error.

## B. Substantial Evidence Supports the ALJ's RFC Determination.

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence

---

[9] Plaintiff only submitted as evidence a letter from the VA summarizing the service-connected disability compensation benefits Plaintiff receives from the VA. R. 327–28 (Jan. 15, 2018).

[10] *See* R. 333–37 (July 21, 2015). The effective date of Plaintiff's VA disability rating is July 31, 2014. ECF No. 11 at 4.

in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). A RFC is "an assessment of an individual's ability to so sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing 1996 WL 374184, *1 (S.S.A. 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

The mere presence of an impairment is not enough to establish that one is suffering from a disability. *Shipley v. Sec'y of HHS*, 812 F.2d 934, 935 (5th Cir. 1987). Rather, Plaintiff must establish that the impairment is so severe that he is

"incapable of engaging in any substantial gainful activity." *Foster*, 2011 WL 5509475, at *6 (citing *Anthony*, 954 F.2d at 293). Thus, when an ALJ conducts his RFC findings and limitations, Plaintiff bears the burden to establish that his impairments result in significant limitations to his potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ found that Plaintiff has the RFC to perform sedentary work. R. 33–36. The Social Security regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). SSR 83-10 elaborates and explains that "standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Myers*, 238 F.3d at 610.

### 1. *The ALJ was not required to give extra weight to any medical opinion, even from a treating source.*

Plaintiff argues that, in crafting the RFC, the ALJ failed to give adequate weight to the opinion of his treater. ECF No.1 at 3; ECF No. 11 at 2. Plaintiff further argues that the ALJ failed to acknowledge or consider the SSA's doctor's evaluation

or the opinion of his personal physician. ECF No. 1 at 3. Defendant counters that the ALJ thoroughly considered the opinions of record. ECF No. 13 at 7.

Plaintiff has not identified which medical sources he believes were not given adequate weight. *See* ECF No. 1; ECF No. 11. Regardless, under the new rule regarding RFC determinations, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a).[11] Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization, and (5) other factors. 20 C.F.R. § 404.1520c(b).[12] The most important factors are consistency and supportability. *Id.; Garcia*, 2020 WL 7417380, at *4. Under the new guidelines, the ALJ must articulate how persuasive

[11] For claims filed after March 27, 2017, the new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.). Because Plaintiff filed his claim on October 13, 2017, the new rule applies.

[12] Other factors include evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. 20 C.F.R. § 404.1520c(b).

14

he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b).[13] In determining whether a claimant is disabled, the regulations direct the ALJ to evaluate every medical opinion in the record regardless of source. *See id.* § 404.1520c(a)–(b).

In determining Plaintiff's RFC, the ALJ applied the new rule. For each opinion he reviewed, the ALJ explained whether he found the medical evidence as a whole and Plaintiff's testimony supported it. The ALJ found Dr. Frank Barnes' opinion to be persuasive, Dr. Merrill Anderson's opinion to be somewhat persuasive, and all other opinions to be unpersuasive. R. 35–36.

The ALJ found the medical opinion of Dr. Barnes, the medical expert who participated in the oral hearing, to be persuasive. R. 35. Dr. Barnes testified that he had reviewed Plaintiff's medical records. R. 35 (referring to R. 50). Based on his review, Dr. Barnes testified that Plaintiff could lift and carry up to 10 pounds occasionally, lift and carry less than 10 pounds frequently, walk or stand for two hours per day, and sit for six hours per day. R. 35 (referring to R. 54–55). Dr. Barnes also testified that Plaintiff could still ambulate effectively. R. 35 (referring to R. 52). In making his finding, the ALJ found that Dr. Barnes' opinion was consistent with

---

[13] "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activities or the "ability to adapt to environmental conditions." *Id.* § 404.1513(a)(2).

the medical evidence as a whole and supported by the Plaintiff's exhibition of normal sensory function and no atrophy.[14] R. 35. The ALJ also referenced records that stated that Plaintiff did not have any atrophy in the lower back. R. 35 (referring to R. 573 (2/27/2018)).

In contrast, the ALJ found the medical evaluation consultative examiner Dr. Verne Leroy Willits conducted to be unpersuasive.[15] R. 36. Dr. Willits met Plaintiff once and completed an internal medicine exam for disability evaluation. R. 535–40 (12/6/2017). Dr. Willits opined that Plaintiff is severely limited in his ability to move about and cannot lift or carry. R. 538 (12/6/2017). In making this finding, the ALJ relied on Plaintiff's testimony that he goes to the corner store to make purchases by himself as evidence of activity that involves some degree of lifting and carrying. R. 36 (referring to R. 61-62). Acknowledging that Dr. Barnes' testimony contradicted Dr. Willits' findings, the ALJ found that Dr. Barnes' testimony was more consistent with the medical record as a whole and he is a board-certified orthopedic surgeon with 40 years of experience. R. 35.

The ALJ also found physician assistant Victor Aghatise's opinion to be

---

[14] The ALJ also stated that Plaintiff exhibited normal motor power. R. 36. However, the exhibit referenced by the ALJ did not mention anything about Plaintiff's motor power. *See* R. 572-73 (2/27/2018).

[15] The ALJ references to consultative examiner Dr. Willits in error as Dr. V. Williams. R. 36, 37. Since the ALJ cites Dr. Willits' internal medicine exam for disability evaluation, the Court believes that the ALJ meant Dr. Willits.

unpersuasive. R. 36. PA Aghatise saw Plaintiff every three months and completed an impairment questionnaire and a treating source statement. R. 543–48 (4/16/2018); R. 549–54 (4/16/2018). PA Aghatise opined that Plaintiff could not stand, walk, or sit for 6 hours. R. 544–45 (4/16/2018); R. 550–51 (4/16/2018). PA Aghatise also opined that Plaintiff cannot lift or carry more than 5 pounds. R. 545 (4/16/2018); R. 551 (4/16/2018). The ALJ did not mention PA Aghatise's treatment relationship to Plaintiff, which is a factor listed in § 494.1529c(c). *See* R. 36. The ALJ found this opinion was unsupported and inconsistent with the record. *Id.* The ALJ specifically relied upon evidence that Plaintiff exhibited normal sensory function and had no atrophy.[16] R. 35–36; R. 572–73 (Feb. 27, 2018).

The ALJ further found the physical assessments state agency examiners Dr. Brian Harper and Dr. Randal Reid conducted were unpersuasive due to their inconsistencies with the rest of the record. R. 35. Both Dr. Harper and Dr. Reid opined that Plaintiff could perform work at the light exertional level. R. 94 (12/28/2017); R. 11 (2/9/2018). The ALJ found that the evidence received at the hearing demonstrates Plaintiff is more disabled than the physical assessments indicated. R. 35. The ALJ also noted that spinal X-rays completed in October 2017 showed degenerative changes in Plaintiff's lumbar spine. R. 35 (referring to R. 347

---

[16] The ALJ again stated that Plaintiff exhibited normal motor power. R. 36. However, the exhibit referenced by the ALJ did not mention anything about Plaintiff's motor power. *See* R. 572–73 (2/27/ 2018).

(10/17/2017)). The ALJ mentioned further that X-rays showed pes planus deformities in Plaintiff's foot.[17] R. 35 (referring to R. 348 (10/17/2017)).

The ALJ then evaluated multiple medical opinions regarding Plaintiff's non-exertional limitations.[18] The ALJ found the mental assessment of consultative examiner Dr. Anderson to be somewhat persuasive. R. 36. Dr. Anderson opined that Plaintiff's ability to interact with supervisors, co-workers, and the public was impaired. R. 336 (7/21/2015). The ALJ found that this opinion was supported by the evidence and consistent with Plaintiff's reports. R. 36 (referring to R. 280 (10/20/2017)).

Dr. Anderson also opined that Plaintiff could understand, remember, and carry out instructions for moderately complex procedures. R. 336 (7/21/2015). The ALJ found this portion of Dr. Anderson's opinion to be unpersuasive as it overstated Plaintiff's abilities. R. 36. The ALJ stated that Plaintiff was more limited. R. 36. Plaintiff testified that he had trouble staying on task. R. 36, 59. The ALJ also referenced an exam which stated that Plaintiff's judgment, insight, attention, and concentration were only fair. R. 36 (referring to R. 392 (8/22/2017)).

The ALJ found state agency examiners Dr. Sallie Boulos-Sophy's and

---

[17] Pes planus is "a condition in which the longitudinal arch is broken down, the entire sole touching the ground." STEDMAN'S MEDICAL DICTIONARY 674890.

[18] "Limitations which affect your ability to meet the demands of jobs other than the strength demands… are considered nonexertional." 20 C.F.R. § 404.1569a(a).

Dr. Leela Reddy's mental assessments to be inconsistent with the record as whole and therefore unpersuasive. R. 36. Both Dr. Boulos-Sophy and Dr. Reddy opined that Plaintiff could understand, remember, and carry out detailed but not complex tasks and could make decisions and concentrate for a long period of time. R. 93 (1/3/2018); R. 110 (2/9/2018). The ALJ found that Plaintiff was more limited than the examiners determined. R. 36. The ALJ specifically referenced an exam conducted in August 2017 which stated that Plaintiff's judgment, insight, attention, and concentration were only fair. R. 36 (referring to R. 392 (8/22/2017)).

The ALJ is entitled to significant deference in deciding the credibility of medical experts and the weight to be accorded their opinions. *See Scott*, 770 F.2d at 485. This Court may not reweigh the evidence nor substitute its judgment for that of the ALJ. *Brown*, 192 F.3d at 496.

### 2.  *The ALJ erred by failing to discuss every medical opinion in the record but did not prejudice Plaintiff.*

Dr. Venkat Polavarapu, whose specialty is psychiatry, completed a "Residual Functional Capacity Form," which stated that Plaintiff visited every 4 to 12 weeks to monitor his PTSD symptoms. Dr. Polavarapu opined that Plaintiff could not work because his PTSD symptoms inhibit him from functioning. R. 341–45 (1/24/2017).[19] The ALJ did not discuss this opinion.

---

[19] Dr. Polavarapu examined Plaintiff, made observations from that examination, and opined on his work limitations. R. 341–45 (1/24/2017). Dr. Polavarapu noted that, due to his PTSD, Plaintiff suffers from depression, instability, poor sleep, and nightmares. R. 341 (1/24/2017).

The ALJ erred by failing to acknowledge this medical opinion in his RFC determination. An ALJ may not "reject a medical opinion without an explanation." *Loza*, 219 F.3d at 395 (citing *Strickland*, 615 F.2d at 1110). It is not sufficient for an ALJ to say that he or she considered the entire record. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("[I]t should go without saying that cursory, boilerplate language does not constitute an explanation for rejecting a medical opinion," finding that the ALJ's "root error was failing to address—or even mention" one of the medical opinions in the decision).

However, "procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Allen v. Saul*, No. 4:19-CV-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Although the ALJ erred by failing to acknowledge the medical opinion of Dr. Polavarapu in his decision, the omission of Dr. Polavarapu's opinion did not prejudice Plaintiff because the opinion of Dr. Polavarapu supports the ALJ's RFC determination. *See Torres v. Colvin*, No. 5:14-CV-34, 2015 WL 12571022, at *9 (S.D. Tex. Feb. 5, 2015) (finding harmless error where ALJ failed to mention a particular medical opinion, but the opinion supported the ALJ's findings); *Garza v.*

---

Dr. Polavarapu further stated that Plaintiff could not continue or resume work at his current or previous employment. R. 344 (1/24/2017). Dr. Polavarapu prescribed medication and declared that Plaintiff might be able to return to work if he complied with his treatment. R. 342, 344 (1/24/2017).

*Astrue*, No. M-09-133, 2013 WL 2432421, at *13 (S.D. Tex. June 3, 2013) (same). Dr. Polavarapu opined that Plaintiff could not perform his past work but could return to work provided he continued his treatment. R. 344 (1/24/2017). The ALJ recognized Plaintiff's non-exertional limitations in his RFC determination and concluded that Plaintiff could carry out detailed and simple repetitive tasks but not complex tasks; with only occasional interactions with the public and coworkers; and at a non-forced pace. R. 33. Therefore, it is not probable that the ALJ would have arrived at a different conclusion had he acknowledged Dr. Polavarapu's opinion in his decision. *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (affirming ALJ's decision when it was not probable a different result would have occurred but for the ALJ's error). Therefore, although the ALJ failure to mention Dr. Polavarapu's opinion in his decision, the error was harmless.

### 3. *Substantial evidence supports the ALJ's RFC determination.*

The ALJ's RFC determination is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law." *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. 2011) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)). Plaintiff argues that the ALJ's RFC includes activities that he would be unable to conduct on a "regular and continuous basis without being interrupted by [his] ongoing experience of symptoms." ECF No. 11 at 3. Defendant

counters that the ALJ's analysis reflects a thorough consideration of the medical evidence and an appropriate assessment of Plaintiff's impairments and RFC. ECF No. 11 at 9.

The Fifth Circuit has held that the RFC assessment is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities. *Myers*, 238 F.3d at 620 (remanding when ALJ failed to address every function of sedentary work). Based on the medical records, the medical opinions, and Plaintiff's testimony, the ALJ found that Plaintiff could perform sedentary work. The ALJ properly conducted a function-by-function examination in the RFC analysis.[20] Out of the range of medical opinions presented to the ALJ, the RFC determination landed somewhere in the middle. The ALJ found some medical opinions understated Plaintiff's condition and some medical opinions overstated Plaintiff's condition and adjusted the RFC accordingly. There is more than a scintilla

---

[20] *See Johnson v. Astrue*, 291 F. App'x 548, 551 (5th Cir. 2008) (affirming ALJ's finding that Plaintiff could perform sedentary work despite Plaintiff's need to change positions throughout the day); *Spellman v. Shalala*, 1 F.3d 357, 364–65 (5th Cir. 1993) (affirming ALJ's finding that Plaintiff could perform sedentary work because treating physician's opinion was inconsistent with evidence of Plaintiff's everyday activities); *Libbey v. Astrue*, No. H-09-2004, 2010 WL 2710669, at *8 (S.D. Tex. July 6, 2010) (affirming ALJ's finding that Plaintiff could perform sedentary work when Plaintiff failed to present treating physicians' opinions to contradict findings, and when Plaintiff's daily activities supported the finding). *But see Myers*, 238 F.3d at 621 (reversing ALJ's finding that Plaintiff could perform sedentary work when ALJ disregarded every treating physician's opinion to the contrary and relied solely on the medical consultant who had never examined Plaintiff).

of evidence supporting the ALJ's finding. Accordingly, the RFC determination is supported by substantial evidence. *See Garza*, 2013 WL 2432421 (S.D. Tex. June 3, 2013) (finding substantial evidence to support the ALJ's RFC determination and his disability determination where none of the expert medical opinions matched the RFC, but other evidence, including the objective medical evidence and the ALJ's assessment of the claimant's subjective symptoms, supported the ALJ's determination as to the claimant's functional abilities and limitations).

## C. The ALJ Relied on the Testimony of a Vocational Expert at Step Five, Not the Medical-Vocational Guidelines.

Plaintiff argues that the ALJ erred when he "applied medical vocational guidelines despite significant functional limitations that erode the occupational base in which [he] may perform." ECF No. 11 at 2. "The medical evidence is clear that I have and suffer from exertional limitations that clearly should be recognized by the social security administration." *Id*. In support of this argument, Plaintiff cites to SSR 83-12, SSR 83-14, SSR 83-15.[21] *Id*. Defendant counters that the ALJ was required to consider the testimony of a vocational expert and did such in this case. ECF No.

---

[21] These Social Security Rulings provide guidance on how to make a disability determination when a claimant has solely non-exertional impairments (SSR 85-15), solely exertional impairments (83-12), or a combination of both (SSR 83-14). SSR 85-15, 1985 WL 56867 (Jan. 1, 1985); SSR 83-14, 1983 WL 31254 (Jan. 1, 1983); SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). "The Social Security Administration's rulings are not binding on this Court, but they may be consulted when the statute at issue provides little guidance." *Myers*, 238 F.3d at 620.

13 at 10.

At step five, the burden shifts to the Commissioner to demonstrate that there is other substantial work in the national economy that the claimant can perform. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). The medical-vocational guidelines are a set of tables that direct a conclusion of "disabled" or "not disabled" based on factors including age, education, and previous work experience. *See* 20 C.F.R. § 404, Subpt. P, App. 2. An ALJ may rely solely on the medical-vocational guidelines if a claimant suffers only from exertional impairments, or his non-exertional impairments do not significantly influence his RFC. *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir. 1987). If a claimant suffers from a combination of exertional and non-exertional impairments, like the Plaintiff in this matter, the ALJ must rely on a vocational expert to determine whether there is other work in the economy that he can perform.[22] *Id.*

Since Plaintiff suffers from a combination of exertional and non-exertional impairments, the ALJ was required to rely on the testimony of a vocational expert. Plaintiff misreads the ALJ's decision. The ALJ did not rely solely on the medical-

---

[22] "Limitations are classified as exertional if they affect your ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(a). "Limitations which affect your ability to meet the demands of jobs other than the strength demands… are considered nonexertional." *Id.*

vocational guidelines. R. 38. Instead, the ALJ relied upon the vocational expert's

testimony from the oral hearing to reach a conclusion of not disabled. R. 37–38.

> "If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.28. *However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.* To determine the extent to which these limitations erode the unskilled sedentary occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. . . Based on the testimony of the vocational expert. . . the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."

R. 37–38 (emphasis added).

Since the ALJ relied upon the testimony of a vocational expert, not the

medical-vocational guidelines, Plaintiff's argument that the ALJ erred by applying

the medical-vocational guidelines is without merit.


## V. CONCLUSION

The Court **GRANTS** Commissioner's motion for summary judgment, ECF

No. 12, and **DENIES** Plaintiff's motion for summary judgment, ECF No. 11. The

Commissioner's determination that Plaintiff is not disabled is **AFFIRMED**.

Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 21, 2021.


_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**